## STATE v. MAGNER FREDERICKA JULIA HANSEN, ETC.

November 3, 1922.

No. 22,973.

**Conviction of midwife sustained.**

1. The evidence in this case is sufficient to sustain a finding that defendant, a midwife, used instruments upon a patient to procure a miscarriage and that the instruments used caused the injection of germs which produced a septic condition resulting in death.

**Judge's examination of witnesses not prejudicial.**

2. There was no prejudice to defendant in the participation of the trial court in examination of witnesses.

[1]Reported in 190 N. W. 481.

Charge to jury.

    3. The court sufficiently charged the jury that unless the germs were injected by the use of the instruments employed by defendant they could not find her guilty.

Defendant was indicted by the grand jury of St. Louis county charged with the crime of manslaughter in the first degree, tried in the district court for that county before Cant, J., and a jury which rendered a verdict of guilty as charged in the indictment. From an order denying her motion for a new trial, defendant appealed. Affirmed.

*James Wharton* and *Fryberger, Fulton, Hoshour & Ziesmer,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Assistant Attorney General, *Warren E. Greene,* County Attorney, and *Mason M. Forbes,* Assistant County Attorney, for respondent.

HALLAM, J.

Defendant was convicted of manslaughter in the first degree in causing the death of a woman by the unlawful use of instruments to procure a miscarriage. Defendant appeals from an order denying a new trial.

1. There is no doubt that deceased died as a result of septic poisoning incident to a miscarriage. There is abundant evidence of the unlawful use of instruments by defendant to procure a miscarriage. Defendant is a professional midwife duly licensed in the state of Minnesota. Deceased consulted her. In a dying declaration deceased accused defendant of using instruments upon her to procure a miscarriage. Defendant admitted the use of instruments, but contended their use was for another and, as she contended, a lawful purpose, that of sterilization. It is difficult to read the testimony of defendant without being forced to the conclusion that the dying declaration of deceased was substantially true. Defendant admitted that deceased came to her in January, 1920, and asked her to procure a miscarriage; that, after some talk, she said to deceased: "Don't you think you had better go through this

anyhow?" and when deceased said: "No," she said: "Well, I [will] give you four treatments and if they don't bring you I don't give you another treatment after that, remember that;" that deceased took four treatments; that in February deceased came back but nothing was done; that on March 26 she came again and defendant at her request "sterilized her" by the use of instruments; that a few days later deceased came back and said: "I think something is doing." The process had commenced. Again in a few days deceased came and in substance told her that the miscarriage had occurred. She died about two weeks later. The medical testimony is that there is no occasion for the alleged sterilization which defendant claimed to have administered.

There is also, in our opinion, sufficient evidence that the use of instruments by defendant caused the injection of germs that produced the septic condition which resulted in death. This is in large measure matter of expert medical opinion. The medical opinion in the case is that death was due to septic germs which first lodged in the uterus; that the use of instruments is the common means of their introduction; that such germs may be carried in by means of an instrument even though the instrument itself is sterilized; that, although there are other methods, they are unusual in case of a person in the physical condition of the deceased. In short, the evidence is sufficient to sustain the verdict that the use of instruments by defendant was unlawful and that this use caused death.

2. Contention is made that "the rights of this defendant were seriously prejudiced by the presiding judge's active participation in the trial." The trial judge questioned witnesses more than is usual, but in our opinion the questions were fair, showed no bias, did not impress any view or opinion of the court and tended to clarify the record. We find no prejudice to defendant.

3. Defendant contends that the court erred in denying defendant's request for a more specific instruction that the jury might consider whether the germs that were injected might have been injected by deceased herself. The court charged: "You have heard the evidence adduced by the defendant * * * tending to

show that these disease germs may have entered the body  *  *  *
in ways other than as claimed by the state.   Are you satisfied
*  *  *  beyond a reasonable doubt that the germs were intro-
duced as the result of the wrongful act of the defendant, or are you
not?   If you are not so satisfied it will be your duty to return a
verdict of not guilty."   At the conclusion of the charge defendant's
counsel said:

"May I ask the court to instruct a little more specifically on that
portion of the indictment which charges that the death was brought
about by the use of the instrument, that the court may be more
specific in its instruction to the jury, that unless they find that
these germs were injected into the system of this woman by the
use of this instrument, that they must find her not guilty.   That
is, they can't figure it that this woman might have inserted those
germs in some other way, and find her guilty."

Thereupon the court further said:

"No, there is not any suggestion that she could have inserted
them in any other way, and I think the court has already said to
you that the point in the case is, or one of the main points is,
whether or not the fatal germs, which finally caused the death of
Carrie Wissel, were introduced into her body through and by the
use of some instrument, which, it is claimed, was wrongfully used
by the defendant.

Anything further, gentlemen?"

There was no response from either side.   In other words, the
court charged fully on this subject and apparently as fully as de-
fendant desired.   There was no error.

Order affirmed.